UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

CHAMBERS OF
THE HONORABLE GINA L. SIMMS
UNITED STATES MAGISTRATE JUDGE

6500 CHERRYWOOD LANE
GREENBELT, MARYLAND 20770



July 17, 2023

LETTER TO COUNSEL

RE: *Marie Evelyn B. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-1240

Dear Counsel:

Pending before this Court are cross-motions for summary judgment, filed by Plaintiff Marie Evelyn B., and the Social Security Administration. (ECF Nos. 12, 14). The Plaintiff also filed a reply brief. (ECF No. 15). Upon review of the pleadings and the record, the Court finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2021).

The Court must uphold the decision of the Social Security Administration ("SSA" or "the Agency") if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The substantial evidence rule "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig*, 76 F.3d at 589. This Court shall not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the SSA. *Id.* For the reasons set forth below, I will deny the motions, reverse the Commissioner's decision in part, and remand the case back to the SSA for further consideration.

I.  BACKGROUND

Plaintiff filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, on April 6, 2019. In both applications, the Plaintiff alleges that disability began on April 4, 2019. (Tr. 15). These claims were initially denied on April 29, 2020, and upon reconsideration, denied again on February 12, 2021. (*Id.*). On April 22, 2021, Plaintiff filed a written request for a hearing, which was granted. A telephone hearing was conducted on September 2, 2021 by an Administrative Law Judge ("ALJ"). (*Id.*). On September 15, 2021, the ALJ found that the Plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (Tr. 12-27). On March 30, 2022, the Appeals Council denied Plaintiff's request for review, and the ALJ's decision dated September 15, 2021, became the final and reviewable decision of the SSA. (Tr. 1). *See also* 20 C.F.R. §422.210(a).

*Marie Evelyn B. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-1240
July 17, 2023
Page 2

## II.        ANALYSIS PERFORMED BY THE ADMINISTRATIVE LAW JUDGE

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is deemed to have a disability if his/her "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work . . . which exists in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A).

To determine whether a person has a disability, the ALJ engages in the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a); 416.920(a). *See e.g., Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015). The steps used by the ALJ are as follows: step one, assess whether a claimant has engaged in substantial gainful activity since the alleged disability onset date; step two, determine whether a claimant's impairments meet the severity and durations requirements found in the regulations; step three, ascertain whether a claimant's medical impairment meets or equals an impairment listed in the regulations ("the Listings"). If the first three steps are not conclusive, i.e., a claimant's impairment is severe but does not meet one or more of the Listings, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC"). Also at step four, the ALJ analyzes whether a claimant could perform past work, given the limitations caused by her/his impairments. Finally, at step five, the ALJ analyzes whether a claimant could perform jobs other than what the claimant performed in the past, and whether such jobs exist in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i) - 404.1520(a)(4)(v).

At steps one through four, it is the claimant's burden to show that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016). If the ALJ's evaluation moves to step five, the burden then shifts to the SSA to prove that a claimant has the ability to perform work and, therefore, is not disabled. *Hunter v. Sullivan*, 993 F.3d 31, 35 (4th Cir. 1992).

Here, the ALJ evaluated Plaintiff's claim by following the sequential evaluation process outlined above. (Tr. 17-27). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 4, 2019, the alleged onset date of Plaintiff's disability. (Tr. 17). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: interstitial cystitis, chronic pain syndrome, and lumbar degenerative disc disease. (Tr. 18, 19). The ALJ found these impairments were severe because these impairments cause more than minimal limitations to the Plaintiff's ability to perform basic work activities as required by SSR 85-28. (*Id.*). However, at step three the ALJ also determined that none of Plaintiff's impairments or combination of impairments met or medically equaled one or more of the Listings. (Tr. 19, 20). Taking into account Plaintiff's severe impairments, the ALJ next assessed the claimant's RFC. Despite Plaintiff's severe impairments, the ALJ determined that Plaintiff had the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can sit for less than 2 hours in an 8-hour day, and stand and/or walk for 7 hours. The claimant can occasionally climb ramps and stairs, climb ladders, ropes and scaffolds, balance, stoop, kneel, crouch and crawl. The claimant's time off task can be accommodated by normal breaks.

(Tr. 20-25). At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a Shipping Order Clerk and a Pet Supply Salesperson. (Tr. 25-27). Before making a finding regarding step five, the ALJ conducted a hearing. (Tr. 51-59).

At that hearing, a vocational expert ("VE") testified, relying upon "The Dictionary of Occupational Titles," and upon her education, background, training, and experience as a vocational rehabilitation counselor. The ALJ asked the VE whether a hypothetical person with the same age, education, and work experience as the Plaintiff—and with her RFC-- would be able to perform work as a Shipping Order Clerk or a Pet Supply Salesperson. (*Id.* at 54-55). The VE opined that the individual would be able to perform these types of work. (*Id.*). Next, the ALJ asked the VE whether a hypothetical person, who would be permitted only to sit for less than two hours and would be required to stand and/or walk for seven hours during an eight-hour day, would be able to work as a Shipping Order Clerk or a Pet Supply Salesperson. (Tr. 55, 57). The VE opined that the individual would be able to perform these types of work. (*Id.*). The ALJ asked the VE whether this same hypothetical person could perform any other work. (Tr. 55). The VE testified that there are light jobs that this hypothetical individual would be able to perform, namely as a Routing Clerk, Marker, or Cashier II. (Tr. 55-56).

The ALJ asked the VE about what would happen if the hypothetical individual was, in addition to taking normal breaks, "off task," for 10 % of the individual's workday. The VE opined that an employer would tolerate an employee being "off task" for no more than 10% of a typical workday; this time "off task" is in addition to that individual taking three regularly scheduled breaks. (Tr. 56).

Returning to the second hypothetical (a hypothetical person with the same age, education, and work experience as the Plaintiff, with her RFC, who in an eight hour day can only sit for less than two hours, stand and/or walk for seven hours), the attorney asked the VE whether the occupations as identified (Shipping Order Clerk and a Pet Supply Salesperson) would allow the hypothetical person to change/shift positions at least every thirty minutes. (Tr. 55, 57, 58). The VE opined that these occupations would allow for the hypothetical person to change position every 30 minutes. (*Id*. at 57, 58). Next, keeping the same second hypothetical in mind, the attorney asked the VE whether the occupations of Shipping Order Clerk and a Pet Supply Salesperson would allow the hypothetical person to take a ten minute bathroom break every hour. (Tr. 55, 58). The VE opined that there is no occupation that would allow for the hypothetical person to take a ten-minute bathroom break every hour. (*Id.* at 58). Finally, the attorney asked the VE if that second hypothetical person suffered from carpal tunnel syndrome and could only use his/her hands for fingering, handling, and feeling, would he/she be able to work as a Shipping Order Clerk or a Pet Supply Salesperson. (Tr. 55, 58). The VE opined, that there is no occupation that the hypothetical

person would be able to perform. (Tr. 58).

At step five, the ALJ ultimately determined that Plaintiff was not disabled, because she could perform past relevant work as a Shipping Order Clerk and a Pet Supply Salesperson, as the jobs were actually and generally performed. (Tr. 27).

### III.   DISCUSSION

In requesting summary judgment, Plaintiff contends that substantial evidence does not exist to support the ALJ's decision for the following reasons: (1) the ALJ failed to properly evaluate Plaintiff's interstitial cystitis ("IC"), as evidenced by the fact that he failed to cite or otherwise mention SSR 15-1p; and (2) relatedly, when fashioning the RFC, the ALJ failed to build and accurate and logical bridge from the evidence related to Plaintiff's IC and the conclusions contained within the RFC. (ECF No. 12, "Plaintiff's Motion," pp. 10, 21-22). The SSA counters that: (1) the ALJ properly followed SSR 15-1p when determining the Plaintiff's RFC; and (2) the ALJ properly assessed the medical evidence and other evidence in the record. (ECF No. 14, "SSA's Motion," pp. 5-7).

I have carefully reviewed the arguments and the record, and I find that the ALJ properly analyzed Plaintiff's IC symptoms in accordance with SSR 15-1p. However, I also find persuasive Plaintiff's contention that the ALJ failed to build an "accurate and logical bridge" between the evidence and the Plaintiff's RFC. Accordingly, I find that remand is appropriate, for the reasons set forth below.

As a preliminary matter, the SSA has created a system through which it defines the physical exertional requirements for jobs in the national economy. Within this system, there are five categories in which a job may fall: (1) sedentary; (2) light; (3) medium; (4) heavy; and (5) very heavy. *See* 20 C.F.R. § 404.1567(a)-(e); 20 C.F.R. § 416.967(a)-(e). "Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *See* 20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).

A claimant's RFC is the most that a claimant could do despite her/his limitations, through consideration of claimant's "'medically determinable impairments of which [the ALJ is] aware,' including those not labeled severe at step two." *Mascio*, 780 F.3d at 635 (quoting 20 C.F.R. § 416.945(a)). Pursuant to 20 C.F.R. § 404.1545(a)(1), an ALJ must devise an RFC that captures a claimant's ability to do physical and/or mental work activities for a sustained period of time (i.e., sedentary, light, medium, heavy, or very heavy work), given the claimant's limitations. An ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [her] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)).

In fashioning an RFC, the ALJ must outline the work an individual can perform and make findings regarding an individual's exertional limitations. The Fourth Circuit requires an ALJ's

findings pertaining to a claimant's RFC to be "accompanied by 'a narrative discussion describing' the evidence supporting" each conclusion. *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311); *see also* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). A proper RFC narrative consists of: "(1) evidence; (2) [a] logical explanation; and (3) [a] conclusion." *Dowling*, 986 F.3d at 388. In the narrative discussion, an ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Petry v. Comm'r, Soc. Sec. Admin.*, Civ. No. SAG-16-464, 2017 WL 680379, at *2 (D. Md. Feb. 21, 2017) (citation omitted). This involves "citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio v. Colvin*, 780 F.3d at 636 (quoting SSR 96-8p, 61 Fed. Reg. 34,478 (July 2, 1996) (internal quotation marks omitted)). An ALJ's logical explanation is just as important as the other two components of the RFC analysis. *Rosalind M. v. Saul*, Civ. No. GLS-19-2791, 2020 WL 6450503, at *2 (D. Md. Nov. 3, 2020). Finally, in *Dowling*, the court held that an ALJ errs when his RFC analysis focuses only on the "intensity and persistence" of claimant's symptoms and "the extent to which the alleged severity of those symptoms [was] supported by the record." 986 F.3d at 388. This kind of "symptom evaluation" is a different kind of analysis than SSR 96-8p and other regulations require for a proper RFC assessment. *Id.*

Furthermore, when a claimant alleges a disability related to IC, an ALJ must perform his analysis in accordance with SSR 15-1p. Pursuant to SSR 15-1p, the ALJ is required to: (1) determine whether objective medical evidence supports the existence of a medically determinable impairment that "could reasonably expect to produce the alleged symptoms." SSR 15-1p. Then, the ALJ must assess the intensity and persistence of the alleged symptoms. *Id.* Specifically, an ALJ must "consider all of the person's impairment-related symptoms in deciding how such symptoms may affect functional capacity." *Id.* In the context of IC, the ALJ will often have to provide an analysis of three particular symptoms: (1) urinary frequency; (2) bladder pain; and (3) pelvic pain. *Id.* In considering the "impairment related symptoms," an ALJ must analyze the intensity and persistence of the symptoms by considering "longitudinal evidence because symptoms, signs, and laboratory findings of [interstitial cystitis] may fluctuate in frequency and severity…." *McLemore v. Comm'r Soc. Sec. Admin.*, Civ. No. ADC-17-2142, 2018 WL 4100035, at *5 (D. Md. Aug. 28, 2018) (citing SSR 15-1p).

1. **Analysis of IC—SSR 15-1p**

In this case, Plaintiff argues that the ALJ's decision is not supported by substantial evidence because "the ALJ did not mention SSR 15-1p at any point in his decision and did not follow the guidance in SSR 15-1p in developing the evidence or evaluating this severe impairment." (Plaintiff's Motion, p. 10).

As a preliminary matter, the Court finds unavailing Plaintiff's argument that the ALJ is required to specifically mention SSR 15-1p, as such error is harmless. *See McLemore*, 2018 WL 4100035, at *5 ("[The claimant] contends that the ALJ's failure to acknowledge SSR 15-lp precludes meaningful review, warranting remand. The [c]ourt disagrees") (internal citation omitted); *see also Bishop v. Comm'r Soc. Sec. Admin*, 583 F. App'x 65, 67 (4th Cir. 2014) (a court will not reverse an ALJ where error is harmless).

More important, the Court finds that the ALJ's analysis complied with the requirements set forth in SSR 15-1p. In performing his analysis, consistent with SSR 15-1p, the ALJ found that: (1) Plaintiff's "medically determinable impairments could be reasonably expected to cause the alleged symptoms; and (2) the evidence did not support Plaintiff's assertions regarding the intensity and persistence of her symptoms. (Tr. 21).

As to the second finding, regarding the intensity and persistence of Plaintiff's symptoms, Plaintiff asserts that the ALJ failed to properly analyze her symptoms through reliance on longitudinal data. (Plaintiff's Motion, pp. 15-16). The Court disagrees. Throughout the ALJ's decision, when assessing the intensity and persistence of Plaintiff's symptoms, the ALJ extensively cites and analyzes longitudinal evidence and makings findings in accordance with such evidence. In his decision, the ALJ describes the inconsistencies that exist between Plaintiff's assertions of intensity and persistence and various pieces of evidence such as: (1) Plaintiff's multi-year work history; (2) Plaintiff's own statements about the fact that her IC was in remission from 2014-2017; and (3) Plaintiff's medical treatment history between 2017 and 2020. (Tr. 21-25).

As such, the Court finds that the ALJ upheld his obligation to make findings related to the intensity and persistence of Plaintiff's symptoms through reliance on longitudinal evidence, and his analysis did not run afoul of SSR 15-1p.

### 2. RFC—Further Explanation Required

The Plaintiff also asserts that the ALJ failed to "explain how he decided that regular work breaks are sufficient to accommodate Plaintiff's urinary frequency." On this matter, the Court finds instructive *Dowling v. Comm'r Soc. Sec. Admin*, *supra*. In *Dowling*, the court remanded the case because the ALJ "relied on an incorrect regulatory framework" when the ALJ failed to provide a function-by-function assessment of the claimant's limitations and only devoted analysis toward evaluating the claimant's symptoms. The court opined that a "RFC assessment is a separate and distinct inquiry from a symptom evaluation, and the ALJ erred by treating them as one and the same." *Id.* at 387. Ultimately, the court held that remand is required where the ALJ only devotes analysis to a claimant's symptoms and fails to provide a proper analysis that connects the evidence to the ALJ's RFC assessment. *Id.* at 387-88.

Here, the Court agrees with Plaintiff.  In this case, the ALJ fails to provide an adequate explanation of how he arrived at the specific limitations contained within the RFC, and, more specifically, how such limitations address the Plaintiff's symptoms associated with her IC. In fact, rather than doing a function-by-function assessment, after the ALJ concludes his assessment of Plaintiff's symptoms, he holds the following:

> Upon consideration of the claimant's allegations, the medical evidence, the medical opinions, and the other evidence of record, the undersigned finds that the above residual functional capacity fully accounts for the limitations caused by the claimant's physical and mental impairments.

(Tr. 25). Although the ALJ did provide an adequate analysis of Plaintiff's IC in accordance with SSR 15-1p, such analysis pertained solely to the evaluation of **Plaintiff's symptoms** (emphasis supplied). However, it is well-established that "an RFC assessment is a separate and distinct inquiry from a symptom evaluation," and it is an error to analyze both as if they were the same factor. *Dowling*, 986 F.3d at 387. Rather than providing a "separate inquiry" toward the limitations contained within the RFC, the ALJ devoted his analysis toward his assessment of the persistence and intensity of the Plaintiff's alleged symptoms. (Tr. 17-27). As a result, the ALJ failed to properly explain his RFC assessment, and this Court is precluded from conducting a meaningful review of the conclusions contained therein. *Dowling*, 986 F.3d at 387-89.

The Court cannot find that substantial evidence supports an RFC fashioned by an ALJ if the ALJ failed to provide a separate analysis explaining how, based on the symptom evaluation, the ALJ arrived at the conclusions contained within the RFC. *Id.* Put another way, the ALJ's conclusory assertion falls short of the explanation necessary to support the ALJ's RFC determination. *See Donell F. v. Kijakazi*, Civ. No. GLS-21-2399, 2023 WL 203351, at *4 (D. Md. Jan. 17, 2023) ("[A] conclusory assertion falls short of a narrative discussion and fails to create an 'accurate and logical bridge' between the evidence and the ALJ's RFC determination") (internal citation omitted).

In sum, the Court finds that the ALJ did not run afoul of SSR 15-1p in his assessment of Plaintiff's IC. However, because the ALJ failed to provide a proper function-by-function assessment and build an "accurate and logical bridge" between the evidence and his RFC assessment, this Court cannot find that his decision is supported by substantial evidence. On remand, the ALJ should provide a proper function-by-function analysis that builds "an accurate and logical bridge" between the evidence and the Plaintiff's RFC.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiff's summary judgment motion (ECF No. 12) is **DENIED**. The SSA's Motion is **DENIED** (ECF No. 14). In addition, consistent with sentence four of 42 U.S.C. § 405(g), the Agency's judgment is **REVERSED IN PART** due to inadequate analysis. The case is **REMANDED** for further proceedings in accordance with this opinion. I express no opinion as to whether the ALJ's ultimate finding that Plaintiff is not disabled, and therefore, not entitled to benefits, is correct. The Clerk of the Court is directed to **CLOSE** this case.

*Marie Evelyn B. v. Kijakazi, Acting Commissioner of Social Security*
Civil No. GLS-22-1240
July 17, 2023
Page 8

    Despite the informal nature of this letter, it should be flagged as an opinion and docketed as such. A separate Order follows.

Sincerely,

/s/
The Honorable Gina L. Simms
United States Magistrate Judge